IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| INFORMATION EXCHANGE TECHNOLOGIES LLC, | Civil Action No. 2:26-cv-00092 |
|---|---|
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| HOPPER, INC, | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Information Exchange Technologies LLC ("IET") files this Complaint against Hopper, Inc. ("Hopper" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|  | Patent No. | Reference |
|---|---|---|
| 1. | 8,682,894 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8682894 |
| 2. | 7,987,168 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987168 |

2. Plaintiff seeks injunctive relief and monetary damages.

**PARTIES**

3. Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Upon public information and belief, Hopper, Inc. is a Canadian corporation with its

principal place of business located at 100-5795 Avenue De Gaspé, Montréal, Quebec, Canada.

5. Based on public information, Defendant engages in making, using, selling, offering for sale, importing, or otherwise providing, directly or indirectly, in the United States and in this State and District, products and services with features and functionalities that infringe the Asserted Patents.

## JURISDICTION AND VENUE

6. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not a resident of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S. C. § 1391(c)(3). *See In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (noting that "[t]he Court's recent decision in TC Heartland does not alter" the alien-venue rule).

9. Defendant offers products and services, including through the manufacture, sale, importation, use, and/or testing of Accused Products, and conducts business in this District.

10. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

11. Specifically, Defendant intends to do and does business in, has committed acts of

infringement in this District, in this State of Texas, and in the United States, directly or through intermediaries, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District, and in the United States.

12. Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

13. IET repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

14. Based on public information and belief, Defendant owns, operates, advertises, and/or controls the website www.hopper.com through which it advertises, sells, offers for sale, provides, and/or educates customers about its products and services.

15. Based on public information and belief, Defendant owns, operates, advertises, and/or controls the Hopper: Flights, Hotels & Cars application (the "Hopper App").

16. Based on public information and belief, the Accused Products perform a method for managing web information on a computer; a method for using a software application to make an information portal distinct from the application display search results the information portal allowing entry of query terms, generating corresponding address query strings to retrieve the search results for display by the information portal, the address query strings including the query terms and additional terms specific to the information portal; and methods associated with performing and/or implementing the same.

17. Based on public information and belief, the Accused Products are available on the Defendant's website and through its app, which users may access through phones, tablets, or computers, including but not limited to the phones, tablets, or computers used by the Defendant's employees and customers.

18. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

## **COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,987,168**

19. IET repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20. The USPTO duly issued U.S. Patent No. 7,987,168 (the "'168 patent") on July 26, 2011, after full and fair examination of Application No. 11/399,851 which was filed on April 8, 2006. The '168 patent is entitled "Method for Managing Information."

21. IET owns all substantial rights, interest, and title in and to the '168 patent, including the sole and exclusive right to prosecute this action and enforce the '168 patent against infringers and to collect damages for all relevant times

22. IET or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '168 patent.

23. The claims of the '168 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of web browsers and online information retrieval systems by enabling automated, simultaneous searches across multiple websites through self-generated query templates that learn and adapt to each site's unique structure.

24. For example, claim 2 of the '168 patent recites "[a] method for using a software application to make an information portal distinct from the application display search results, the information portal allowing entry of query terms, generating corresponding address query strings to retrieve the search results for display by the information portal, the address query strings including the query terms and additional terms specific to the information portal, the method of using the application comprising: receiving, in the software application, a query term for which results are to be displayed by the information portal; generating, in the software application, an address query string including the query term, the address query string being generated from a query string template identifying a query term location and including the additional terms specific to the information portal; communicating the address query string to the information portal; and displaying the search results generated by the information portal based on the address query string; wherein the search results displayed by the information portal are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string."

25. The written description of the '168 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26. Defendant has directly infringed the claims of the '168 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 2 of the '168 patent. As just one example of infringement, Defendant, using the

Accused Products, performs a method for using a software application (e.g., Hopper App) to make an information portal (e.g., airline website) distinct from the application display search results, the information portal allowing entry of query terms (e.g., flight origin, flight destination, dates of travel, no. of travelers, etc.), generating corresponding address query strings (e.g., Request URL) to retrieve the search results for display by the information portal, the address query strings including the query terms (e.g., O (Outbound Airport), D (Departure Back Airport), OD (Outbound Date), DD (Departure Back Date), A (no. of travelers), etc.) and additional terms (e.g., terms appended to information portal URL) specific to the information portal.  Defendant performs a step of receiving, in the software application (e.g., Hopper App), a query term (e.g., flight origin, flight destination, dates of travel, no. of travelers, etc.) for which results are to be displayed by the information portal.  Defendant performs a step of generating, in the software application, an address query string including the query term, the address query string being generated from a query string template identifying a query term location and including the additional terms specific to the information portal.  Defendant generates, in the software application (e.g., Hopper App), an address query string including the query term, the address query string being generated from a query string template (e.g., different for each airline website) identifying a query term location (e.g., https://www.alaskaair.com/) and including the additional terms (e.g., O (Outbound Airport), D (Departure Back Airport), OD (Outbound Date), DD (Departure Back Date), A (no. of travelers), etc.) specific to the information portal.  Defendant performs a step of communicating the address query string to the information portal.  Defendant communicates the address query string to the information portal (e.g., airline website), e.g., to retrieve search results from the information portal. Defendant performs a step of displaying the search results generated by the information portal based on the address query string; wherein the search results displayed by the information portal

are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string. Defendant displays the search results generated by the information portal based on the address query string. The search results displayed by the information portal are the same search results that would have been displayed if the query term had been entered into the information portal, and the information portal had generated the address query string. *See* '168 Evidence of Use Charts attached hereto as **Exhibit A**.

27. Defendant has also indirectly infringed and continues to indirectly infringe the '168 patent by inducing others to directly infringe the '168 patent. Defendant has induced end-users, including but not limited to its employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '168 patent by providing the Accused Products for their use. Defendant has taken active steps, directly or through its contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '168 patent, including, for example, claim 2 of the '168 patent. Such steps by Defendant include, among other things, advising or directing end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '168 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused products by others would infringe the '168 patent. Defendant's infringement in this regard is ongoing.

28. On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights).

29. Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant

30. Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '168 patent was, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

31. IET has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IET in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '168 patent. Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,682,894

33. The USPTO duly issued U.S. Patent No. 8,682,894 (the "'894 patent") on March 25, 2014, after full and fair examination of Application No. 13/602,653 which was filed September 4, 2012. The '894 patent is entitled "Method for Managing Information."

34. IET owns all substantial rights, interest, and title in and to the '894 patent, including the sole and exclusive right to prosecute this action and enforce the '894 patent against infringers and to collect damages for all relevant times.

35. IET or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '894 patent.

36. The claims of the '894 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of web browsers and online search systems by allowing users to search and retrieve information from multiple websites at once through an automated, unified interface.

37. For example, claim 1 of the '894 patent recites "[a] method for managing web information on a computer," which includes "adding, by a user of the computer through a user interface, a plurality of information portals within at least one information category, wherein each information portal corresponds to at least one website; generating an information location identifier template for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals; displaying, through the user interface, to the user at least one data entry field for entering a query term by the user; receiving the query term entered into the displayed at least one data entry field; creating a separate corresponding query string for each of the plurality of information portals based on the corresponding information location identifier template; communicating with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term; and displaying the search results generated by the at least one information portal in the format

specific to the at least one information portal."

38.     The written description of the '894 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.     Defendant has directly infringed the claims of the '894 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '894 patent. As just one example of infringement, Defendant, using the Accused Products (e.g., www.hopper.com), performs a method for managing web information on a computer.  Defendant performs a step of adding, by a user of the computer through a user interface, a plurality of information portals within at least one information category, wherein each information portal corresponds to at least one website.  Defendant adds, through a user interface, a plurality of information portals (e.g., airline websites) within at least one information category (e.g., Airlines), wherein each information portal corresponds to at least one website (e.g., specific to an airline).  Defendant performs a step of generating an information location identifier template for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals.  Defendant generates an information location identifier template (e.g., airline website URL) for each of the plurality of information portals such that each of the plurality of information portals recognizes the corresponding location identifier template for effecting a search on each of the plurality of information portals.  Defendant performs a step of

displaying, through the user interface, to the user at least one data entry field for entering a query term by the user. Defendant displays, through the user interface, to the user at least one data entry field (e.g., From, To, Dates, Travelers, etc.) for entering a query term by the user. Defendant performs a step of receiving the query term entered into the displayed at least one data entry field. Defendant receives the query term entered into the displayed at least one data entry field (e.g., selections made by a user). Defendant performs a step of creating a separate corresponding query string for each of the plurality of information portals based on the corresponding information location identifier template. Defendant creates a separate corresponding query string for each of the plurality of information portals based on the corresponding information location identifier template (e.g., to search a plurality of airline sites). Defendant performs a step of communicating with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term. Defendant communicates with each of the plurality of information portals to send the corresponding query string and to retrieve search results associated with the received query term (e.g., to get airline options). Defendant performs a step of displaying the search results generated by the at least one information portal in the format specific to the at least one information portal. Defendant displays the search results generated by the at least one information portal in the format specific to the at least one information portal (e.g., by using the airline specific logo for each airline option). *See* '894 Evidence of Use Charts, attached hereto as **Exhibit B**.

40. Defendant has also indirectly infringed and continues to indirectly infringe the '894 patent by inducing others to directly infringe the '894 patent. Defendant has induced end-users, including but not limited to its employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, the '894 patent by providing the Accused

Products for their use. Defendant has taken active steps, directly or through its contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '894 patent, including, for example, claim 1 of the '894 patent. Such steps by Defendant include, among other things, advising or directing end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has performed these steps, which constitute induced infringement with the knowledge of the '894 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused products by others would infringe the '894 patent. Defendant's infringement in this regard is ongoing.

41. On information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus have been willfully blind of Plaintiff's patent rights.

42. Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant

43. Since at least the time of receiving the original Complaint in this matter, Defendant's direct and indirect infringement of one or more claims of the '894 patent was, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent

44. IET has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IET in an amount that compensates it for such infringements, which

by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

45. Plaintiff has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Plaintiff has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of one or more claims of the '894 patent. Defendant's actions have interfered with and will interfere with Plaintiff's ability to license technology. The balance of hardships favors Plaintiff's ability to commercialize its own ideas and technology. The public interest in allowing Plaintiff to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

46. Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

   a. Judgment that one or more claims of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or all others acting in concert therewith;

   b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the claims of the Asserted Patents, and; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents, and by such entities;

c. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringement of the Asserted Patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 4, 2026                    Respectfully submitted,

                                           By: /s/ C. Matthew Rozier
                                           Jonathan L. Hardt (TX 24039906) *
                                           **ROZIER HARDT MCDONOUGH PLLC**
                                           712 W. 14th Street, Suite A
                                           Austin, Texas 78701
                                           Telephone: (737) 295-0876
                                           Email: hardt@rhmtrial.com

                                           James F. McDonough, III (GA 117088) *
                                           **ROZIER HARDT MCDONOUGH PLLC**
                                           659 Auburn Avenue NE, Unit 254
                                           Atlanta, GA 30312
                                           Telephone (404) 564-1866
                                           Email: jim@rhmtrial.com

                                           C. Matthew Rozier (CO 46854)*
                                           **ROZIER HARDT MCDONOUGH PLLC**
                                           1001 Bannock Street, Suite 241
                                           Denver, Colorado 80204
                                           Telephone: (404) 779-5305
                                           Telephone: (202) 316-1591
                                           Email: matt@rhmtrial.com

                                           **Attorneys for Plaintiff**
                                           ***INFORMATION EXCHANGE TECHNOLOGIES, LLC***

                                           *Admitted to the Eastern District of Texas

**List of Exhibits**

- **Exhibit A** – Evidence of Use Regarding Infringement of U.S. Patent No. 7,987,168
- **Exhibit B** – Evidence of Use Regarding Infringement of U.S. Patent No. 8,682,894

**List Of Supportive Links**

1. U.S. Patent No. 8,682,894, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8682894
2. U.S. Patent No. 7,987,168, USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7987168